STATE OF NORTH CAROLINA v. RICKY ALTON HUGGINS

No. 43A94

(Filed 9 December 1994)

### 1. Homicide § 315 (NCI4th)— first-degree murder—no instruction on voluntary manslaughter—no error

The trial court did not err in a first-degree murder prosecution by not instructing the jury on voluntary manslaughter where defendant did not raise imperfect self-defense and the evidence tended to show that there had been no prior hostility between defendant and the two victims (one of whom lived), defendant indicated that they had been friends in the past, they used obscenities upon getting out of their truck to tell him to put up a motorcycle, and their most provocative act was to take a few steps toward the defendant immediately before he shot them without warning. The victims' actions did not rise to the level of provocation which would render the mind incapable of cool reflection.

**Am Jur 2d, Homicide §§ 519 et seq.**

### 2. Evidence and Witnesses § 1693 (NCI4th)— first-degree murder—photographs of victim—admissible

The trial court did not err in a first-degree murder prosecution by admitting two black and white photographs of victim's fatal wound where a deputy indicated that they would be helpful to illustrate his testimony regarding the location of the wound

and they were not excessive in number, repetitious or peculiarly gruesome.

**Am Jur 2d, Evidence § 974.**

**Admissibility of photograph of corpse in prosecution for homicide or civil action for causing death. 73 ALR2d 769.**

3. **Evidence and Witnesses § 263 (NCI4th)— first-degree murder—defendant's maturity level—excluded**

The trial court did not err in a first-degree murder prosecution by excluding evidence tending to show that defendant played with younger children where defendant contended that the jury should be allowed to infer from this that he was immature. Defendant's association with younger children is an ambiguous indicator of his maturity level, his maturity level is not relevant to the case in the absence of evidence that he lacked the capacity to form the intent required for the crimes charged, and, assuming relevance, exclusion of the evidence was within the court's discretion under N.C.G.S. § 8C-1, Rule 403 because the evidence would have unnecessarily confused the issues in the case, given its slight probative value.

**Am Jur 2d, Evidence §§ 363 et seq.**

4. **Larceny § 195 (NCI4th)— felonious larceny—value of stolen truck—no instruction on misdemeanor larceny**

The trial court did not err in a prosecution for felonious larceny, among other charges, by not instructing on misdemeanor larceny when the only evidence of the value of the stolen truck indicated that it was worth more than $1,000, the threshold amount for felonious larceny. There was no evidence which would have supported a jury verdict of misdemeanor larceny.

**Am Jur 2d, Larceny §§ 174, 175.**

**Lesser-related state offense instructions: modern status. 50 ALR4th 1081.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Brown (Frank R.), J., at the 1 June 1993 Criminal Session of Superior Court, Pitt County, upon a jury verdict finding the defendant guilty of first-degree murder. The defendant's motion to bypass the Court of

Appeals as to additional judgments was allowed on 31 January 1994. Heard in the Supreme Court on 11 October 1994.

*Michael F. Easley, Attorney General, by John G. Barnwell, Assistant Attorney General, for the State.*

*Steven M. Fisher for the defendant-appellant.*

MITCHELL, Justice.

The evidence at trial tended to show that on 29 January 1992, the defendant, Ricky Alton Huggins, was drinking wine with his uncle. Subsequently they parted and the defendant encountered his cousin, Danny Hardee. The defendant and Hardee proceeded to Oakland Farms to ride a motorcycle owned by the farm manager, Charles Wall. The defendant was familiar with the farm because he had worked there the previous summer. When they arrived they entered the farm shop and got the motorcycle. They also went into the office in the shop and took some coins and Charles Wall's gun. Each of them shot the gun before they tried to start the motorcycle.

At approximately 5:00 p.m. that afternoon, Louis Perry and Joseph Wallace arrived at Oakland Farms in a truck owned by Wall. They found the defendant and his cousin attempting to start the motorcycle. Perry and Wallace worked for Wall and knew the defendant from their work with him on the farm the summer before. They asked the defendant whether he had permission to ride the motorcycle and he responded that he did. The two men then left. They later discovered upon speaking to Wall that the defendant did not have permission to ride the motorcycle. Wall told them to go back and tell the defendant to get off the motorcycle. When Perry and Wallace returned to the farm and told the defendant that he did not have permission to ride the motorcycle, the defendant shot them both. Wallace died as a result of the gunshot wounds; Perry survived.

After the shootings, the defendant's cousin fled the scene. The defendant left in the truck that the victims had been driving. While driving the truck, he damaged the transmission. David Steffus, a passerby, noticed the defendant broken down on the side of the road and stopped to help him. When Steffus offered his help, the defendant pulled the gun and demanded the keys to Steffus's truck. Steffus, a firearms instructor, noticed that the gun was not loaded. He refused to turn over the keys but agreed to take the defendant to the next town. After doing so, Steffus called the police and informed them of

his encounter with the defendant. The police found and arrested the defendant at the same convenience store where Steffus had left him. Additional evidence pertinent to the issues raised on appeal will be discussed in the relevant issues.

[1] In his first assignment of error, the defendant argues that the trial court erred by failing to instruct the jury on voluntary manslaughter. The trial court instructed the jury that it could find the defendant guilty of first-degree murder, either on the theory of premeditation and deliberation or the felony-murder theory. The jury returned a verdict of murder in the first degree based upon the felony-murder theory, but found the defendant not guilty of first-degree murder based upon the theory of premeditation and deliberation. The jury predicated its felony-murder conviction upon two underlying felonies—felonious larceny of Charles Wall's truck and assault with a deadly weapon inflicting serious injury upon Louis Perry.

"[W]hen the law and evidence justify the use of the felony-murder rule, then the State is not required to prove premeditation and deliberation, and neither is the court required to submit to the jury second-degree murder or manslaughter unless there is evidence to support it." *State v. Yelverton*, 334 N.C. 532, 545, 434 S.E.2d 183, 190 (1993) (quoting *State v. Strickland*, 307 N.C. 274, 292, 298 S.E.2d 645, 657 (1983)); *see also State v. Thomas*, 325 N.C. 583, 386 S.E.2d 555 (1989). The defendant contends that there was evidence which would have supported a verdict of voluntary manslaughter. A killing "committed in the heat of passion suddenly aroused by adequate provocation, or in the imperfect exercise of the right of self-defense, is voluntary manslaughter." *State v. Ray*, 299 N.C. 151, 158, 261 S.E.2d 789, 794 (1980). The defendant has not raised the argument that he acted in imperfect self-defense and the evidence did not support such a charge. Therefore, we are left to determine whether there was evidence from which a reasonable juror could have concluded that the defendant acted in the heat of passion suddenly aroused by adequate provocation.

In *State v. Watson*, 338 N.C 168, 449 S.E.2d 694 (1994), this Court said:

There are two kinds of provocation relating to the law of homicide: One is that level of provocation which negates malice and reduces murder to voluntary manslaughter. *State v. Montague*, 298 N.C. 752, 757, 259 S.E.2d 899, 903 (1979); *State v. Ward*, 286 N.C. 304, 313, 210 S.E.2d 407, 413-14 (1974), *judgment*

*vacated in part,* 428 U.S. 903, 49 L. Ed. 2d 1207 (1976). Mere words, however abusive or insulting are not sufficient provocation to negate malice and reduce the homicide to manslaughter. *State v. McCray,* 312 N.C. 519, 324 S.E.2d 606 (1985). Rather, this level of provocation must ordinarily amount to an assault or threatened assault by the victim against the perpetrator. *State v. Rogers,* 323 N.C. 658, 667, 374 S.E.2d 852, 858 (1989); *State v. Williams,* 296 N.C. 693, 252 S.E.2d 739 (1979).

The other kind of provocation is that which, while insufficient to reduce murder to manslaughter, is sufficient to incite defendant to act suddenly and without deliberation. Thus, words or conduct not amounting to an assault or a threatened assault may be enough to arouse a sudden and sufficient passion in the perpetrator to negate deliberation and reduce a homicide to murder in the second degree. *State v. Corn,* 303 N.C. 293, 278 S.E.2d 221 (1981); *State v. Misenheimer,* 304 N.C. 108, 114, 282 S.E.2d 791, 795-96 (1981); *State v. Thomas,* 118 N.C. 1113, 1124, 24 S.E. 431, 434-35 (1896).

*Id.* at 176-77, 449 S.E.2d at 699-700. We will address only the type of provocation which reduces first-degree murder to manslaughter because the defendant does not contend that there was evidence to support the type of provocation reducing the crime to second-degree murder.

The evidence tended to show that when Mr. Perry and Mr. Wallace first arrived at Oakland Farms they joked with the defendant. The evidence also tended to show that the defendant had fished with one of the men and had planned a fishing trip with the other. Each of the men had bought him food when he worked on the farm. There was no indication of any prior hostility between the defendant and these two men. In fact, even the defendant indicated that they had been friends in the past. The defendant testified that when the men returned to tell him to put up the motorcycle, they used obscenities upon getting out of the truck. The most provocative act the evidence tended to show that the two men did that day was take a few steps toward the defendant immediately before he shot them without warning. Evidence of those several steps by two men who were admittedly the defendant's friends did not amount to evidence of either an assault or a threatened assault. This Court has stated numerous times in the past that

[k]illing in the heat of passion on sudden provocation means killing, "without premeditation but under the influence of sudden 'passion,' this term means any of the emotions of the mind known

as rage, anger, hatred, furious resentment, or terror, rendering the mind incapable of cool reflection."

*State v. Jones*, 299 N.C. 103, 109, 261 S.E.2d 1, 6 (1979) (quoting *State v. Jennings*, 276 N.C. 157, 161, 171 S.E.2d 447, 449-50 (1970)). We find, under the circumstances presented by the aforementioned evidence, that the actions of Mr. Perry and Mr. Wallace did not rise to the level of provocation which would "render the mind incapable of cool reflection." Therefore, the evidence did not warrant the requested instruction on voluntary manslaughter. This assignment of error is without merit.

[2] The defendant next assigns as error the trial court's admission of two black and white photographs which depicted the victim's fatal wound. The defendant contends that uncontroverted evidence previously introduced at trial indicated the location of the victim's wound and that the defendant fired the gun. Thus, he asserts, the slight relevance of these photographs was substantially outweighed by the danger of unfair prejudice to the defendant. The State argues that the photographs were properly admitted to show the location and nature of the wounds as testified to by Deputy Sheriff Moore.

Rule 403 of the North Carolina Rules of Evidence precludes the admission of evidence, including photographic evidence, if the probative value of the evidence is substantially outweighed by, *inter alia*, the danger of unfair prejudice. *See* N.C.G.S. § 8C-1, Rule 403 (1994). Whether the use of photographic evidence is more probative than prejudicial is a matter within the discretion of the trial court and will not be disturbed on review absent an abuse of that discretion. *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

Photographs may . . . be introduced in a murder trial to illustrate testimony regarding the manner of the killing so as to prove circumstantially the elements of murder in the first degree, and for this reason such evidence is not precluded by a defendant's stipulation as to the cause of death.

*Id.* at 284, 372 S.E.2d at 526 (citations omitted). After the photographs complained of were authenticated, Deputy Moore indicated that they would be helpful to illustrate his testimony regarding the location of the fatal wound. The trial court admitted the photographs for such illustrative purposes and so limited the jury's consideration of them by proper instructions. While the photographs may have been prejudicial to the defendant, they were not unfairly so. They were not

excessive in number, repetitious or peculiarly gruesome—each a relevant factor which weighs against the admission of certain photographic evidence. *Id.* at 285-86, 372 S.E.2d at 527. They were two relevant black and white photographs of the victim properly used to illustrate the testimony of Deputy Moore. As such, their admission by the trial court did not amount to an abuse of discretion. Thus, this assignment of error is without merit.

[3] The defendant next contends that the trial court improperly excluded testimony of the defendant's mother and an adult neighbor concerning the defendant's maturity level. Evidence which has a tendency to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant and generally admissible. N.C.G.S. § 8C-1, Rule 401 (1994). The defendant offered evidence tending to show that he played with younger children at times. He contended that the jury should be allowed to infer from this fact that he was immature. First, we note that defendant's association with younger children is an ambiguous indicator of his maturity level. Second, we note that the defendant's maturity level is not relevant to this case in the absence of evidence that it was so extreme that the defendant lacked the mental capacity to form the intent required for the crimes charged. In essence the defendant argues that the evidence he sought to introduce tended to show he played with children and, therefore, he was immature; he was immature and, therefore, he lacked the capacity to form the requisite intent. The connection between the evidence offered and any fact of consequence was very tenuous at best.

Assuming *arguendo* that this evidence was relevant, its exclusion was not error because relevant evidence may be excluded if its probative value is substantially outweighed by the danger of confusing the issues or misleading the jury. *See* N.C.G.S. § 8C-1, Rule 403 (1994). A trial court's decision to exclude evidence under Rule 403 is reviewable by this Court for an abuse of discretion. *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986). As we observed above, the relevance of this evidence is highly questionable. Interjecting evidence which the defendant contends would allow the jury to infer his immaturity, an immaterial matter, so that the jury could make an additional leap to infer a fact of consequence would have unnecessarily confused the issues in this case, given the slight probative value of the contested evidence. Therefore, we conclude that, even when it is assumed *arguendo* that this evidence was relevant and admissible, its

exclusion was within the trial court's discretion. We overrule this assignment of error.

**[4]** In his final assignment of error, the defendant argues that the trial court erred by failing to instruct on misdemeanor larceny. He contends that the evidence was inconclusive on the actual value of the stolen truck and the jury should have been given the option of finding misdemeanor larceny. We disagree.

In *State v. Coleman*, 24 N.C. App. 530, 211 S.E.2d 542 (1975), the Court of Appeals held that the owner of a stolen vehicle could properly testify as to the value of his vehicle and such testimony was sufficient to go to the jury on the issue of felonious larceny. *Id.* at 532, 211 S.E.2d at 543. The owner of the stolen 1985 Chevrolet diesel truck in the present case, Charles Wall, testified that the value of the truck was "about $3,000" at the time it was stolen. This evidence was uncontroverted by the defendant, and he did not object to this valuation. There was no evidence of the vehicle's value other than the testimony by Mr. Wall. When the value of property stolen is greater than $1,000, the crime committed is a felony. N.C.G.S. § 14-72(a) (1994). The jury was instructed twice that it had to find that the value of the truck exceeded $1,000 in order to convict the defendant of felonious larceny. Its verdict necessarily determined the value of the truck as being more than $1,000. *See State v. Cooper*, 256 N.C. 372, 381, 124 S.E.2d 91, 97 (1962). This Court has said that when all the evidence tends to show that the stolen property is worth more than the statutory threshold amount, then it is inappropriate to instruct the jury on the lesser charge of misdemeanor larceny. *State v. Jones*, 275 N.C 432, 437, 168 S.E.2d 380, 384 (1969). The trial court properly refused to give the requested instruction because the only evidence of value indicated that the truck was worth more than the threshold amount and there was no evidence which would have supported a jury verdict of misdemeanor larceny. Therefore, we overrule this assignment of error.

For the foregoing reasons, we conclude that the defendant received a fair trial free of prejudicial error.

No error.