STATE OF NORTH CAROLINA v. MELVIN WAYNE BECK

No. COA03-466

(Filed 6 April 2004)

**1. Homicide— first-degree murder—instruction on lesser-included offenses—second-degree murder—voluntary manslaughter**

The trial court did not err in a first-degree murder case by instructing the jury on the lesser-included offenses of second-degree murder and voluntary manslaughter, because: (1) words or conduct not amounting to an assault or a threatened assault may be enough to arouse a sudden and sufficient passion in the perpetrator to negate deliberation and reduce a homicide to second-degree murder; (2) defendant's consumption of alcohol and testimony that he was mad could allow a jury to conclude that defendant was not acting in a cool state of blood and did not form the intent to kill over some period of time; and (3) the evidence introduced could allow the jury to find legal provocation for voluntary manslaughter when the two men argued about defendant's son, the victim struck defendant as he was trying to leave, the two men quarreled and wrestled for a time before ceasing the struggle to drink beer, the victim brandished a knife, and defendant obtained possession of the knife during the struggle and used it to stab the victim.

**2. Identification of Defendants— in-court identification—voir dire**

Although the trial court erred by overruling defendant's objection to a witness's in-court identification of defendant without allowing voir dire, defendant failed to show prejudicial error to warrant a new trial because: (1) the witness testified that she was present outside the victim's home on the night he died and recalled several specific identifying characteristics of both the victim and defendant, including skin tone, clothing, and facial features; and (2) defendant's ex-wife and son testified that defendant confessed that he killed the victim.

**3. Sentencing— aggravating factors—fugitive—pretrial release**

The trial court erred by finding as aggravating factors that defendant was a fugitive from Florida and that he was on pretrial release at the time of the victim's death because while the evi-

dence was sufficient to establish one of these aggravating factors, the trial court erred by relying on the same evidence to find two distinct aggravating factors.

Appeal by defendant from judgment entered 30 August 2002 by Judge William Z. Wood, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 24 February 2004.

*Attorney General Roy Cooper, by Special Deputy Attorney General Tiare B. Smiley, for the State.*

*Daniel Shatz, for defendant-appellant.*

TYSON, Judge.

Melvin Wayne Beck ("defendant") appeals from a judgment entered after a jury found him guilty of second-degree murder. We find no prejudicial error at trial, vacate defendant's sentence, and remand for resentencing.

## I. Background

On 1 July 2000, Timothy McBride's ("McBride") brother arrived at McBride's house and found him dead in his bed, concealed by bed coverings. The brother observed extensive bruising and abrasions on McBride's face, a cut on his throat from ear to ear, wounds around his neck, stab wounds in his chest, and a large incision across his abdomen with his intestines protruding. McBride was naked from his waist up and his lower body was clad with blue jeans. Police officers responded and discovered a cigarette butt with a blood stain, small drops of blood on an end table near the body, and a baseball bat in the bedroom closet with blood drops. No knife or other murder weapon was found in the house.

Jan Stewart ("Stewart"), a taxi driver, testified that at 1:37 a.m. on 30 June 2002 she was parked on the street waiting to pick up a fare. Her cab faced the front porch of McBride's house. Her headlights shone on the front door, which was open, and brightly lit. She saw a man who was "suntanned," with no shirt, and wearing blue jeans. Stewart also observed a second man emerge from the darkened hallway, grab the first man in a headlock, and slam him down to the floor. The second man stood up, looked out, and slammed the front door shut. Stewart later identified the man she saw assaulted as McBride and identified defendant as his attacker.

Cathy Juma ("Juma"), defendant's ex-wife, testified that in the early morning hours of 30 June 2000 defendant entered his residence, began yelling about fighting with a man, and indicated to her that he thought he had beaten a man to death. Defendant told his son, Clayton, that he had lost his knife while running home. He ordered Clayton to get a knife and go back with him to McBride's house, so Clayton could "look death in the eye."

Clayton testified that he did not know whether defendant was serious or "just drunk," but he did not leave the house with his father. The next day, after consuming several alcoholic beverages at home, defendant told his wife that he and McBride had fought. McBride had hit him, causing bruising and swelling. Defendant stated, "[i]t just made me mad and I just jumped up and started fighting." Defendant also told Juma that he left McBride's house, and later went back, "slashed his throat, and gutted him." Juma called her sister several days later, informed her of the conversation with defendant, and contacted police. Juma related her conversation with defendant to detectives and arranged for the investigators to speak with Clayton.

After defendant was arrested and informed of his rights, he made a signed confession to Detective E.P. Reese and Detective Kearns. Defendant told the detectives about disputes, which had arisen between McBride and Clayton over a moped, and which resulted in Clayton giving his moped to McBride. McBride had stopped by defendant's house on the day of the murder and had left a message. Defendant went to McBride's house that night to talk about his son, Clayton, and the problems that existed between them concerning the moped. McBride had threatened Clayton and stated he would take care of him the next time he "ran his mouth at him." Defendant told McBride to call him instead if he had any problems with Clayton. Defendant attempted to leave the house, but McBride attacked him, hitting him in the leg with a "stick or ax handle." The two men began fighting. Defendant grabbed McBride and punched him.

The men stopped fighting and defendant started to leave when McBride apologized and asked defendant to stay and drink another beer. The men drank some beer, smoked a cigarette, and defendant again started to leave. McBride again threatened Clayton if he came by "acting smart." Defendant told McBride not to worry about Clayton, because if McBride called him, defendant would come and get Clayton. McBride swung at defendant and another fight ensued. McBride punched defendant and knocked him to the floor. Defendant got up, ran towards McBride, kicked him in the head, and slammed

him into the door frame. The fight moved to the bedroom, where defendant continued hitting McBride in the face. McBride said, "I'll kill you," jumped on top of defendant, and pulled out a knife. According to defendant, as the men were struggling, McBride was struck in the stomach and chest with the knife. Defendant thought McBride's injuries to the neck occurred when defendant slung the knife while trying to escape.

Defendant left the house and used the outside water hose to wash his hands. He walked up the street, threw the knife in the grass near a church, and continued walking home. Defendant denied taking anything from McBride's house and admitted having a conversation with his son, Clayton, about the events of that night. Defendant explained that although he told Clayton he needed to go back and "finish," "it [had] already happened," and "it was all over with." Defendant also admitted to telling his ex-wife Juma about what had occurred.

The jury convicted defendant of second-degree murder and acquitted him of first-degree burglary. He was sentenced to a minimum term of 313 months and a maximum of 385 months. Defendant appeals.

## II. Issues

The issues on appeal are whether the trial court erred by: (1) instructing the jury on the lesser-included offenses of second-degree murder and voluntary manslaughter, (2) overruling defendant's objection to Stewart's in-court identification of him without allowing *voir dire*, and (3) finding as aggravating factors that defendant was a fugitive from Florida and was on pretrial release at the time of McBride's death.

## III. Lesser-Included Offenses

[1] Defendant argues that no evidence supports the trial court's instructions to the jury on the lesser-included offenses of second-degree murder and voluntary manslaughter. We disagree.

"[A] defendant is entitled to have a lesser-included offense submitted to the jury only when there is evidence to support it," *State v. Johnson*, 317 N.C. 193, 205, 344 S.E.2d 775, 782 (1986), and where " 'the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.' " *State v. Leazer*, 353 N.C. 234, 237, 539 S.E.2d 922, 924 (2000) (quoting *Keeble v. United States*, 412 U.S. 205, 208, 36 L. Ed. 2d 844, 847 (1973)). "This rule

STATE v. BECK

[163 N.C. App. 469 (2004)]

enhances the reliability of the fact-finding process and provides a 'necessary additional measure of protection for . . . defendant.' " *Leazer*, 353 N.C. at 237, 539 S.E.2d at 924 (quoting *Beck v. Alabama*, 447 U.S. 625, 645, 65 L. Ed. 2d 392, 407 (1980)). If the State's evidence is sufficient to fully satisfy its burden of proving each element of the greater offense and there is *no* evidence to negate these elements other than the defendant's denial that he committed the offense, the defendant is not entitled to an instruction on a lesser offense. *Leazer*, 353 N.C. at 237, 539 S.E.2d at 925.

Here, the trial court instructed the jury on first-degree murder, second-degree murder, and voluntary manslaughter. Defendant initially requested all three instructions during the jury charge conference. After closing arguments and before the trial court instructed the jury, defense counsel objected to instructions on the lesser-included offenses. The trial court overruled defendant's objection. Defendant now assigns error to the jury instructions being given on lesser-included offenses of first-degree murder.

### A. Second-Degree Murder

First-degree murder is "the unlawful killing of a human being with malice and with premeditation and deliberation." *Johnson*, 317 N.C. at 202, 344 S.E.2d at 781. Second-degree murder, a lesser-included offense, "is the unlawful killing of a human being with malice but without premeditation and deliberation." *Leazer*, 353 N.C. at 237, 539 S.E.2d at 924-25 (quoting *State v. Flowers*, 347 N.C. 1, 29, 489 S.E.2d 391, 407 (1997), *cert. denied*, 522 U.S. 1135, 140 L. Ed. 2d 150 (1998)).

"Premeditation means that the act was thought over beforehand for some length of time, however short. Deliberation means an intent to kill, carried out in a cool state of blood, . . . and not under the influence of a violent passion or a sufficient legal provocation." *Leazer*, 353 N.C. at 238, 539 S.E.2d at 925 (citations omitted). " 'Premeditation and deliberation are ordinarily not susceptible to proof by direct evidence and therefore must usually be proven by circumstantial evidence.' " *Id.* (quoting *State v. Alston*, 341 N.C. 198, 245, 461 S.E.2d 687, 713 (1995), *cert. denied*, 516 U.S. 1148, 134 L. Ed. 2d 100 (1996)).

Here, the evidence showed that defendant and McBride had been drinking beer the night of the murder. Clayton and Juma testified that defendant was "very drunk" when he left their house and went to see

McBride. McBride struck defendant when defendant attempted to leave. Evidence also showed that McBride was the first person to grab the knife. During the entire fight, McBride made threats to defendant regarding his son, Clayton.

Our Supreme Court has recognized that " 'words or conduct not amounting to an assault or a threatened assault may be enough to arouse a sudden and sufficient passion in the perpetrator to negate deliberation and reduce a homicide to murder in the second degree.' " *State v. Huggins*, 338 N.C. 494, 498, 450 S.E.2d 479, 482 (1994) (quoting *State v. Watson*, 338 N.C. 168, 177, 449 S.E.2d 694, 700 (1994)). Further, defendant's consumption of alcohol and testimony that he was "mad" could allow a jury to conclude that defendant was not acting in a "cool state of blood" and did not form the intent to kill over some period of time. *Huggins*, 338 N.C. at 498, 450 S.E.2d at 482; *see Leazer*, 353 N.C. at 238, 539 S.E.2d at 925.

Substantial evidence was admitted such that the jury could find negated defendant's premeditation and deliberation. The trial court did not err by instructing the jury on second-degree murder. This assignment of error is overruled.

### B.  Voluntary Manslaughter

Voluntary manslaughter is the "unlawful killing of a human being without malice and without premeditation and deliberation" and "often occurs when the defendant acts in a heat of passion produced by legal provocation." *State v. Camacho*, 337 N.C. 224, 233, 446 S.E.2d 8, 13 (1994) (citations omitted).

> Legal provocation exists when the victim's actions against the defendant rise to the level of an assault or threatened assault. The doctrine of heat of passion is meant to reduce murder to manslaughter when defendant kills without premeditation and without malice, but rather under the influence of the heat of passion suddenly aroused which renders the mind temporarily incapable of cool reflection.

*Id.* (citations omitted). In *Camacho*, the defendant had consumed alcohol and was attacked with a knife by the victim. Our Supreme Court held that the victim's charging at and wrestling with the defendant was sufficient legal provocation to instruct the jury on voluntary manslaughter. *Id.* at 233-34, 446 S.E.2d at 13 (citing *State v. McConnaughey*, 66 N.C. App. 92, 311 S.E.2d 26 (1984)).

Here, the evidence indicated that the men argued over Clayton and McBride struck defendant as he tried to leave. The two men quarreled and wrestled for a time before ceasing the struggle to drink beer. After McBride made further threats against Clayton, the two men resumed fighting. McBride brandished a knife. During the struggle, defendant obtained possession of the knife and used it to stab McBride. The trial court did not err in instructing the jury on voluntary manslaughter. The evidence introduced could allow the jury to find legal provocation. This assignment of error is overruled.

## IV. In-Court Identification

[2] Defendant contends the trial court erred by failing to *voir dire* a witness who made an in-court identification. Defendant argues that Stewart's identification of him as being present at McBride's house on the night of the murder did not originate with her observation at the time of the offense. He contends the trial court's failure to *voir dire* the witness before allowing the in-court identification was prejudicial error. We disagree.

Our Supreme Court has discussed this issue and held,

[b]efore admitting challenged in-court identification testimony, the trial court should conduct a voir dire, find facts, and determine the admissibility of the testimony. Failure to conduct a voir dire will be deemed harmless where the evidence is clear and convincing that the witness's in-court identification of defendant originated with the witness's observation of defendant at the time of the crime and not from an impermissibly suggestive pretrial identification procedure.

*State v. Flowers*, 318 N.C. 208, 216, 347 S.E.2d 773, 778 (1986) (citations omitted). In *Flowers*, the Supreme Court held that the trial court's error in admitting the in-court identification without conducting a *voir dire* was not harmless because the witness "*concluded* [defendant] was one of her attackers because of what [defendant] admitted and not by any other identifying characteristic." *Id.*

Here, the State presented the testimony of Stewart, a taxi driver, who observed a fight between McBride and defendant in the lighted doorway of McBride's house on the night he was murdered. Stewart testified to several "identifying characteristics." *Id.* Stewart stated that her vehicle's high beams were directed towards McBride's brightly lit house. She saw a person "wearing blue jeans and no shoes

and no shirt," who was "suntanned" with "scraggly" blonde hair. Detective Michael Saunders testified that McBride was wearing blue jeans and did not have on a shirt when he inspected the body. Stewart recalled that another man, with long and uncombed hair, grabbed the first man. She testified that the second man was taller, with a "rather large nose" and slender face. She remembered the second man gritting his teeth and grimacing as he looked out of the house. During her testimony, Stewart identified defendant as the second man.

Stewart initially told detectives that she did not think she could identify the men because of the distance between her cab and the house. She was not shown a photographic line-up by police detectives. Detectives did show her two photographs of two men the day before she testified. She was not told the identity of the two men in the photographs and was shown both photographs at the same time. She identified defendant in one of the photographs and McBride in the other.

Although the trial court erred by denying defendant's request to *voir dire* the witness before her in-court identification, defendant has not shown prejudicial error to warrant a new trial. Stewart testified that she was present outside the victim's home on the night he died and recalled several specific "identifying characteristics" of both the victim and defendant, including skin tone, clothing, and facial features. *Id.* Additionally, Juma and Clayton testified that defendant confessed that he killed McBride. The trial court's error was harmless beyond a reasonable doubt.

## V. Aggravating Factors in Sentencing

[3] Defendant contends the trial court erred in finding as aggravating factors during sentencing that defendant was a fugitive from Florida and that the offense was committed by defendant while he was on release facing other charges. He argues these two aggravating factors are not supported by separate evidence. We agree.

N.C. Gen. Stat. § 15A-1340.16(a) (2003) requires the State to prove by a preponderance of the evidence that an aggravating factor exists. N.C. Gen. Stat. § 15A-1340.16(d) (2003) lists several aggravating factors, including: "(12) The defendant committed the offense while on pretrial release on another charge" and "(20) Any other aggravating factor reasonably related to the purposes of sentencing." The statute also states, "the same item of evidence shall not be used to prove more than one factor in aggravation." *Id.*

**STATE v. BECK**

[163 N.C. App. 469 (2004)]

During the sentencing hearing, the State handed to the trial court a certified true copy of the warrant and accompanying documents showing defendant failed to appear in court for a burglary allegedly committed in Florida. Defense counsel did not object to this document or during the State's presentation of the argument that defendant committed the offense while on pretrial release and was a fugitive. Defense counsel later argued against using fugitive status as an aggravating factor because Florida did not seek to extradite defendant. Defendant did not challenge the accuracy of the fugitive warrant or the State's method of establishing the aggravating factors by handing the documents to the trial court.

Relevant to this assignment of error, the trial court found as aggravating factors that "12. The defendant committed the offense while on pretrial release on another charge," and "20. The defendant was a fugitive from Florida." The only evidence presented by the State to support these findings is the warrant. While this evidence is sufficient to establish *one* of these aggravating factors, the trial court erred in relying on the same evidence to find *two* distinct aggravating factors. *Id.* We vacate defendant's sentence and remand to the trial court to strike one of the aggravating factors, either finding No. 12 that defendant committed the offense while on pretrial release or the finding under No. 20 that defendant was a fugitive from Florida. Defendant should be resentenced accordingly.

## VI. Conclusion

The trial court did not err by instructing the jury on the lesser-included offenses to first-degree murder. Evidence was presented to show a lack of premeditation and deliberation, as well as legal provocation. The trial court erred by failing to *voir dire* Stewart before she made an in-court identification. This error was harmless considering the witness's testimony regarding identifying characteristics and the other evidence presented at trial. We find no prejudicial error at trial.

The trial court erred in relying on the same evidence to find two different aggravating factors during sentencing. We vacate defendant's sentence and remand to the trial court for resentencing.

No prejudicial error at trial. Remand for resentencing.

Judges WYNN and McGEE concur.