An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-451

Filed 20 August 2025

Richmond County, Nos. 21CRS051870-760, 21CRS051871-760, 21CRS051872-760

STATE OF NORTH CAROLINA

v.

MICHAEL DEQUAN JOHNSON.

Appeal by Defendant from Judgments entered 24 March 2023 by Judge Stephan R. Futrell in Richmond County Superior Court. Heard in the Court of Appeals 20 March 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney Generals Terence Steed and Isham Faison Hicks, for the State.*

> *Cooley Law Office, by Craig M. Cooley, for Defendant-Appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

Michael Dequan Johnson (Defendant) appeals from Judgments entered upon jury verdicts finding him guilty of two counts of Attempted First-Degree Murder, two counts of Assault with a Deadly Weapon with Intent to Kill or Inflict Serious Injury (ADWIKISI), Assault with a Deadly Weapon with Intent to Kill (ADWIK), and

Possession of a Firearm by a Felon. The Record before us, including evidence presented at trial, tends to reflect the following:

On 11 January 2022, Defendant was indicted on three counts of Attempted First-Degree Murder in 21 CRS 51870; ADWIK and two counts of ADWIKISI in 21 CRS 51871; and Possession of a Firearm by a Felon in 21 CRS 51872. At trial, the State's evidence tended to show that on the evening of 18 October 2021, Tatyana Little and Keasiaa McDonald went together to Hail Mary's Tavern—a bar in Hamlet, North Carolina. Corey Womble and Defendant were also at the bar. The four individuals sat together at the bar for about forty-five minutes. The individuals then moved outside and sat on the bar's back porch.

Around 12:30 a.m., Defendant and Little got into a "heated" argument. Little testified Defendant kept trying to persuade her to speak to a man named "Elijah" on the phone—Little refused because Elijah had broken into her mother's house previously.

Little and McDonald started to leave the bar. Little heard McDonald yell for her to "run". Defendant was following Little and McDonald out of the bar with a gun. Womble tried to calm Defendant down, and Defendant shot him. Defendant followed Little, grabbed her by her jacket, and shot her three times.

McDonald fell into a ditch and hid there. Defendant found her and said, "I know you gonna tell." Defendant put the gun to McDonald's head and pulled the trigger twice; however, the gun did not fire because its chamber was empty.

Defendant then left the scene.

One of the bar's staff members heard what sounded like "firecrackers", so he exited the bar to see the source of the sound. Outside, he saw Womble lying on the ground. Womble told the staff member, "I've been shot." The bar's staff called 9-1-1. McDonald, physically unharmed, exited the ditch and found Little—who had been shot. Emergency medical assistance arrived shortly thereafter. Little was eventually airlifted to a hospital.

Detective Anthony Zeppetella interviewed Little while she was hospitalized. Little identified Defendant as the gunman. The gun used was never recovered, but shell casings, bullets, and bullet fragments were found at the scene. Law enforcement also recovered video footage from nearby buildings, which showed Defendant shooting Little and Womble.

Defendant was found and taken into custody ten days after the incident. In a videotaped statement played before the jury, Defendant admitted to shooting Little and Womble but denied shooting McDonald.[1]

---

[1] Although this video was admitted and played at trial, it was not filed with this Court in accordance with North Carolina Rule of Appellate Procedure 9(d) or otherwise transmitted to this Court for our review. *See* N.C.R. App. P. 9(d) (2024); *Kerr v. Long*, 189 N.C. App. 331, 334, 657 S.E.2d 920, 922 (2008) ("Pursuant to the North Carolina Rules of Appellate Procedure, our review is limited to the record on appeal . . . and any other items filed with the record in accordance with Rule 9(c) and 9(d)." (citing N.C.R. App. P. 9(a) (2006))). Consequently, our consideration of Defendant's videotaped statement is limited to what is contained in the Record before us, i.e., the following exchange between Detective Zeppetella and the State:

[State]: And, did [Defendant] make any admissions to you?

None of the State's witnesses testified Little or anyone else had threatened Defendant. Little testified she and McDonald had both been unarmed that evening. Little and McDonald both identified Defendant as the gunman.

At the close of the State's evidence, defense counsel moved to dismiss all charges. The trial court denied this Motion. After declining to present evidence, defense counsel renewed the Motion to Dismiss. The trial court again denied the Motion. During the charge conference, defense counsel stated he wanted to "talk about any inclusion of lesser included offenses" at the appropriate time. Defense counsel stated he didn't "want to miss anything" and wanted "to make sure there wasn't anything that we missed, that we should instruct on that we don't[.]" The trial

---

[Detective Zeppetella]: He did.

[State]: And, what, if anything, admissions did he make?

. . . .

[Detective Zeppetella]: He admitted to shooting Tatyana Little and Corey Womble.

. . . .

[State]: And during this interview, the portions that we watched, was there anything that may have given you concern or pause regarding the defendant's statements?

[Detective Zeppetella]: Going backwards to what I had known, at the time speaking to [McDonald] and [Little] and things like that, I thought it was strange that he admitted to shooting both [Little] and [Womble] but [McDonald], he completely said he didn't at all. You know, I had spoken with [McDonald] a couple times during the investigation and she provided a consistent statement across both of her -- both of her interviews. And he had no problem owning up to all the other crimes except that one specific one.

court asked defense counsel if he would like to "take tonight to look it over" and defense counsel responded that he would. The following day, during final review of the jury instructions, defense counsel again stated, "I [want to] make sure that any lesser included offenses that can be included are included in the lesser included offenses." Defense counsel never requested the trial court instruct the jury on any specific lesser-included offenses as to the charges of Attempted First-Degree Murder.

On 24 March 2023, the jury returned verdicts finding Defendant not guilty of the Attempted First-Degree Murder of McDonald and guilty of all other charges. The trial court entered Judgments in accordance with the verdicts and sentenced Defendant to consecutive sentences of 230 to 288 months of imprisonment for each Attempted First-Degree Murder conviction in 21 CRS 51870; 100 to 132 months of imprisonment for each ADWIKISI conviction in 21 CRS 51871 and 35 to 54 months of imprisonment for ADWIK, to run concurrently to the sentences in 21 CRS 51870; and 18 to 31 months of imprisonment for Possession of a Firearm by a Felon, to run consecutively to the sentences in 21 CRS 51871. On 29 March 2023, Defendant timely filed Notice of Appeal.

## Issues

The issues on appeal are whether (I) the trial court erred by denying Defendant's Motions to Dismiss the charges of Attempted First-Degree Murder; and (II) Defendant received ineffective assistance of counsel (IAC) because his trial counsel did not request the trial court instruct the jury on attempted voluntary

manslaughter.

## Analysis

I.     Motions to Dismiss

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "Upon [a] defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984) (citation omitted). "If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion [to dismiss] should be allowed." *Fritsch*, 351 N.C. at 378, 526 S.E.2d at 455 (citation omitted).

"In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted). However, "[w]hether the State has offered such substantial

evidence is a question of law for the trial court." *State v. McKinney*, 288 N.C. 113, 119, 215 S.E.2d 578, 583 (1975) (citations omitted).

Defendant challenges the denial of his Motions to Dismiss solely with respect to the charges of Attempted First-Degree Murder.[2] "The essential elements of attempted first-degree murder are (1) a specific intent to kill another person unlawfully; (2) an overt act calculated to carry out that intent, going beyond mere preparation; (3) the existence of malice, premeditation and deliberation accompanying the act; and (4) a failure to complete the intended killing." *State v. Foreman*, 270 N.C. App. 784, 789, 842 S.E.2d 184, 188 (2020) (citation and quotation marks omitted); *see also* N.C. Gen. Stat. § 14-17 (2023) (defining murder in the first degree as any kind of "willful, deliberate, and premeditated killing"). On appeal, Defendant argues there was insufficient evidence he acted with malice, premeditation, and deliberation because he presented substantial evidence he acted based on legal provocation.

A. *Malice*

"[M]alice, as it is ordinarily understood, means not only hatred, ill will, or spite, but also that condition of mind which prompts a person to take the life of another intentionally, without just cause, excuse, or justification, or to wantonly act in such a

---

[2] Because the jury found Defendant not guilty of the Attempted First-Degree Murder of McDonald, our analysis is limited to whether the trial court erred in failing to dismiss the charges of the Attempted First-Degree Murder of Little and Womble.

manner as to manifest depravity of mind, a heart devoid of a sense of social duty, and a callous disregard for human life." *State v. Crawford*, 329 N.C. 466, 481, 406 S.E.2d 579, 587 (1991) (citations omitted). "[I]n the context of attempted first degree murder, the intentional use of a deadly weapon itself gives rise to a presumption that the act was undertaken with malice." *State v. Peoples*, 141 N.C. App. 115, 118, 539 S.E.2d 25, 28-29 (2000) (citing *State v. Judge*, 308 N.C. 658, 661, 303 S.E.2d 817, 820 (1983)).

Here, there was ample evidence Defendant intentionally used a deadly weapon—i.e., a gun—to shoot Little and Womble.[3] This evidence includes the testimony of Little and McDonald that Defendant shot Little and Womble; video footage from nearby buildings showing Defendant shooting Little and Womble; bullets and shell casings found at the scene; and Defendant's own admission he shot Little and Womble.

Ordinarily, when the presumption of malice attaches because of the use of a deadly weapon, the State is not required to do anything more to prove malice. *State v. Reynolds*, 307 N.C. 184, 190, 297 S.E.2d 532, 536 (1982) (citations omitted). However, when the presumption has attached but there is "some evidence raising an

---

[3] We note Defendant's contention he did not intend to shoot Womble. However, Defendant admitted to intentionally shooting Little. "[U]nder the doctrine of transferred intent, it is immaterial whether the defendant intended injury to the person actually harmed; if he in fact acted with the required or elemental intent toward someone, that intent suffices as the intent element of the crime charged as a matter of substantive law." *State v. Locklear*, 331 N.C. 239, 245, 415 S.E.2d 726, 730 (1992) (citing *State v. Wynn*, 278 N.C. 513, 519, 180 S.E.2d 135, 139 (1971)) (other citations omitted). Thus, even if Defendant did not intend to shoot Womble, his specific intent to shoot Little is sufficient to establish the requisite intent to shoot Womble. *See id.*

issue on the existence of malice . . . , the presumption [of malice] disappears altogether, leaving only a permissible inference which the jury may accept or reject." *Id.* (citation omitted).

Thus, even assuming Defendant's videotaped statement—or any of the other evidence presented at trial—demonstrated Defendant acted on legal provocation, the ultimate question of whether the State had met its burden of proving the shooting was committed with malice was to be resolved by the jury. *See id.*; *see also State v. Taylor*, 155 N.C. App. 251, 266, 574 S.E.2d 58, 68 (2002) ("The issue of whether the evidence is sufficient to rebut the presumption of malice in a homicide with a deadly weapon is . . . a jury question." (citation omitted)).

In the case *sub judice*, there was sufficient evidence from which the jury could have found Defendant intended to kill Little and Womble with malice, including Defendant's use of a deadly weapon, Defendant's admission he shot Little and Womble, as well as McDonald's testimony that Defendant and Little got into an argument immediately before Defendant shot Little and Womble. *See Peoples*, 141 N.C. App. at 118, 539 S.E.2d at 28 ("In the context of attempted first degree murder, . . . the existence of malice . . . may be inferred from the conduct and statements of the defendant before and after the incident[.]" (citation omitted)). Moreover, we have held the mere presumption of malice created by the use of a deadly weapon is sufficient to withstand a motion to dismiss for insufficient evidence. *See Taylor*, 155 N.C. App. at 266, 574 S.E.2d at 68 (citing *State v. Barrett*, 20 N.C. App. 419, 422, 201

S.E.2d 553, 555, *cert. denied*, 285 N.C. 86, 203 S.E.2d 58 (1974)).  As such, our analysis remains unchanged, even assuming Defendant's videotaped statement is contained in the Record.

Thus, there was substantial evidence Defendant intentionally used a deadly weapon to shoot Little and Womble.  Therefore, there was substantial evidence Defendant acted with malice.

B. *Premeditation and Deliberation*

Defendant also argues there was insufficient evidence he acted with premeditation and deliberation.  "Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation." *State v. Bullock*, 326 N.C. 253, 257, 388 S.E.2d 81, 83 (1990) (citation omitted).  "Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *State v. Davis*, 349 N.C. 1, 33, 506 S.E.2d 455, 472 (1998) (citations omitted).  " 'Cool state of blood' does not mean the absence of passion and emotion, but an unlawful killing is deliberate and premeditated if done pursuant to a fixed design to kill, notwithstanding that defendant was angry or in an emotional state at the time unless such anger or emotion was such as to disturb the faculties and reason." *State v. Britt*, 285 N.C. 256, 262, 204 S.E.2d 817, 822 (1974) (citations omitted).

> Some of the circumstances from which premeditation and deliberation may be implied are (1) absence of provocation on the part of the deceased, (2) the statements and conduct of the defendant before and after the killing, (3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill will or previous difficulties between the parties, (5) the dealing of lethal blows after the deceased has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds.

*State v. Olson*, 330 N.C. 557, 565, 411 S.E.2d 592, 596 (1992) (citing *State v. Gladden*, 315 N.C. 398, 430-31, 340 S.E.2d 673, 693 (1986)).

In the case *sub judice*, there is sufficient evidence Defendant acted with premeditation and deliberation. Taken in the light most favorable to the State, the evidence tends to show Defendant upset Little by asking her to speak to Elijah, Little and McDonald were both unarmed, Little and McDonald were leaving the bar when Defendant began shooting, and Defendant shot Little multiple times at close range. Moreover, Defendant admitted his actions were intentional. Defendant's evidence of legal provocation, including his videotaped statement to Detective Zeppetella, will not negate the State's affirmative evidence of premeditation and deliberation. *See State v. Scott*, 356 N.C. 591, 598, 573 S.E.2d 866, 870 (2002) ("Evidence in the record supporting a contrary inference is not determinative on a motion to dismiss." (citing *Fritsch,* 351 N.C. at 382, 526 S.E.2d at 457)). Consequently, Defendant's statement—included in the Record or not—does not change our analysis.

Thus, viewed in the light most favorable to the State, there was substantial

evidence Defendant acted with premeditation and deliberation. Therefore, the trial court properly denied Defendant's Motions to Dismiss.

II.     Ineffective Assistance of Counsel

Defendant contends he received ineffective assistance of counsel at trial, in that his defense counsel failed to request the trial court to instruct the jury on attempted voluntary manslaughter.

"In general, claims of ineffective assistance of counsel should be considered through motions for appropriate relief and not on direct appeal." *State v. Warren*, 244 N.C. App. 134, 144, 780 S.E.2d 835, 841 (2015) (citation and quotation marks omitted). However, "IAC claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required[.]" *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001) (citations omitted).

Under *Strickland v. Washington*, a defendant must satisfy a two-part test to show ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of

the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697, 104 S. Ct. at 2069.

Here, Defendant argues his trial counsel's performance was deficient because his counsel did not request an instruction on attempted voluntary manslaughter. Specifically, Defendant contends his trial counsel should have requested an instruction on attempted voluntary manslaughter because there was evidence tending to show Defendant's actions were taken in the heat of passion aroused by legal provocation.

"Voluntary manslaughter is a lesser included offense of murder in the first degree." *State v. Woodard*, 324 N.C. 227, 232, 376 S.E.2d 753, 756 (1989) (citation omitted). "A jury must be instructed on a lesser included offense only when evidence has been introduced from which the jury could properly find that the defendant had committed the lesser included offense." *Id.* (citation omitted). "In order to receive an instruction on voluntary manslaughter, there must be evidence tending to show '[a] killing [was] committed in the heat of passion suddenly aroused by adequate provocation, or in the imperfect exercise of the right of self-defense[.]' " *State v. Vincent*, 195 N.C. App. 761, 765, 673 S.E.2d 874, 876 (2009) (alterations in original) (quoting *State v. Huggins*, 338 N.C. 494, 497, 450 S.E.2d 479, 481 (1994)). "Legal provocation must be under circumstances amounting to an assault or threatened assault." *State v. Montague*, 298 N.C. 752, 757, 259 S.E.2d 899, 903 (1979) (citation omitted).

In his briefing before this Court, Defendant asserts he had been driven to the bar by a friend; at the bar, Little made a call to someone[4]; Defendant overheard the person on the phone tell Little he was on his way to the bar to hurt Defendant; Little told Defendant he was going to die; Defendant told his friend about Little's phone call but his friend was not yet ready to leave the bar; Defendant concluded "if he stayed at Hail Mary's he'd be killed or seriously injured", so he shot Little to "eliminate" the threat. This, Defendant contends, is sufficient evidence his actions were taken in the heat of passion aroused by legal provocation. *See Vincent*, 195 N.C. App. at 765, 673 S.E.2d at 876. However, because the video wherein Defendant allegedly recounts this version of events is not in the Record before us, we are unable review this argument on appeal. *See Kerr*, 189 N.C. App. at 334, 657 S.E.2d at 922 (concluding this Court could not review certain arguments where the defendant discussed and quoted from a videotaped deposition which was played for the jury at trial but did not include the video or a transcript of the deposition in the record on appeal).

Nonetheless, even assuming Defendant's videotaped statement is in the Record before us and is consistent with Defendant's account of the events at issue as

---

[4] We note Defendant repeatedly argues Little admitted she called someone named "Ram Bennett" shortly before the shooting took place. Our review of the Record reveals no evidence of this admission. While it is true the Record establishes Little made a phone call at 12:30 a.m., Detective Zeppetella testified he did not "remember [Little] saying anything specifically about her making a phone call to Ram Bennett specifically. . . . I don't remember her specifically during that conversation whether it was to Ram Bennett or not." Detective Zeppetella further testified he remembered "seeing [Bennett's] name during the investigation[,]" and Bennett's name may have been in the notes he made when he took Little's statement—but he could not recall because he did not have his notes with him.

presented in his briefing, it is insufficient to establish his actions were taken in the heat of passion aroused by legal provocation. Defendant argues his actions could not have been carried out "in a cool state of blood", *see Davis*, 349 N.C. at 33, 506 S.E.2d at 472, but has identified no evidence he was placed in such a position of anger or fear that it disturbed his ability to reason. *See Britt*, 285 N.C. at 262-63, 204 S.E.2d at 822. Even in the version of events Defendant articulates in his brief as being what he told Detective Zeppetella, Defendant contends he heard a man on the phone tell Little he was on his way to the bar to "harm" Defendant. Defendant does not contend Little personally threatened to harm him, nor is there evidence Little showed a physical manifestation of the intent to carry out a threat. *See State v. Haight*, 66 N.C. App. 104, 107-08, 310 S.E.2d 795, 797 (1984) (finding evidence of legal provocation where decedent issued verbal threats then walked toward the defendant and appeared to reach for a gun). To the contrary, all accounts of the evidence tend to show that Little was leaving the bar when Defendant followed and shot her.

Thus, there was no evidence Defendant was under circumstances amounting to an assault or a threatened assault. *See Montague*, 298 N.C. at 757, 259 S.E.2d at 903. Therefore, there was insufficient evidence from which the jury could properly find Defendant had committed attempted voluntary manslaughter. Consequently, Defendant cannot show his trial counsel's failure to request such an instruction was deficient.

## Conclusion

Accordingly, for the foregoing reasons, we conclude there was no error in Defendant's trial and affirm the Judgments.

NO ERROR.

Judges GORE and MURRY concur.

Report per Rule 30(e).