JENNIE LYNN BILLINGS and EVERETTE BILLINGS, Plaintiffs v. JEROME H. ROSENSTEIN, M.D., THOMAS J. MASCENIK, M.D., and FOOTHILLS CENTER FOR WOMEN, P.A., Defendants

No. COA04-1647

(Filed 18 October 2005)

**Witnesses; Medical Malpractice— standard of care—out-of-state expert—qualifications**

A Johns Hopkins professor was competent to testify as an expert to the appropriate standard of care of a neurologist in Wilkes County where he based his opinion on demographic data and his familiarity with similar communities, was licensed in North Carolina and had practiced in multiple communities in the State, and was board certified in the same specialty as defendant. Moreover, his testimony presented issues of fact as to whether defendant breached the standard of care, and summary judgment for defendant was reversed. N.C.G.S. § 90-21.12.

Appeal by Plaintiffs from judgment entered 16 August 2004 by Judge Clarence E. Horton, Jr. in Superior Court, Wilkes County. Heard in the Court of Appeals 13 September 2005.

*Knott, Clark & Berger, L.L.P., by Bruce W. Berger, and L.G. Gordon, Jr., for plaintiff-appellants.*

*Wilson & Iseman, L.L.P., by G. Gray Wilson, Linda L. Helms, and Maria C. Papoulias, for defendant-appellee Thomas J. Mascenik.*

WYNN, Judge.

To establish the relevant standard of care for a medical malpractice action, an expert witness must demonstrate that he is familiar

**BILLINGS v. ROSENSTEIN**

[174 N.C. App. 191 (2005)]

with the standard of care in the community where the injury occurred, or the standard of care of similar communities. N.C. Gen. Stat. § 90-21.12 (2004). In this case, the doctor could testify, as an expert witness, about the relevant standard of care, as he established that he was familiar with the community or a similar community. Accordingly, we reverse the trial court's summary judgment in favor of Defendant.

The facts tend to show that in February 2003, Plaintiffs Jennie Lynn Billings and Everette Billings brought an action against Defendants Thomas J. Mascenik, M.D., Jerome H. Rosenstein, M.D., and Foothills Center for Women, P.A., alleging that Defendants negligently treated Ms. Billings, resulting in her "becoming physically debilitated and incapacitated[,]" after having a stroke due to undiagnosed eclampsia.[1] The Complaint further alleged that Dr. Mascenik, a specialist in the filed of neurology, treated Ms. Billings at Wilkes Regional Medical Center in Wilkes County, North Carolina.

In support of their allegations, the Billingses presented expert medical testimony by Dr. Peter Kaplan, M.D., a neurologist practicing in Baltimore, Maryland and a professor at John Hopkins University School of Medicine. Dr. Kaplan worked at Duke University Medical Center in Durham, North Carolina for three years, where he completed his residency and fellowship. Dr. Kaplan had a license to practice medicine in the State of North Carolina, but had not practiced in North Carolina in over fifteen years. While practicing in North Carolina, Dr. Kaplan worked with an outreach program in Fayetteville, North Carolina.

During his deposition testimony, Dr. Kaplan testified that he was familiar with the standard of care for neurologists practicing in the Wilkes County, North Carolina area. Dr. Kaplan said that his familiarization with the standard of care in that area came from his personal experience working in North Carolina, specifically, his work in Fayetteville, his experience with patients that are sent from outlining areas, as well as studying the demographic data of Wilkes County. However, Dr. Kaplan did admit that he had never been to Wilkes Regional Medical Center and had no personal knowledge about Wilkes Regional Medical Center.

On 17 May 2004, Dr. Mascenik filed a Motion for Summary Judgment on the grounds that Dr. Kaplan was not qualified to testify

1. The Complaint also included a cause of action for loss of consortium filed by Mr. Billings.

as an expert witness as to the relevant standard of care, and the Billingses therefore failed to prove the standard of care. On 16 August 2004, the trial court granted summary judgment in favor of Dr. Mascenik, and later dismissed the claim without prejudice against the two remaining Defendants, Jerome H. Rosenstein, M.D. and Foothills Center for Women, P.A. Plaintiffs appeal from the 16 August 2004 order granting summary judgment.

---

On appeal, Plaintiffs argue that the trial court erred in granting Dr. Mascenik's Motion for Summary Judgment. We agree.

"[T]he standard of review on appeal from summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998). Also, the evidence presented by the parties must be viewed in the light most favorable to the non-movant. *Id.* The court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2004). But summary judgment is rarely appropriate in negligence cases. *Vassey v. Burch*, 301 N.C. 68, 73, 269 S.E.2d 137, 140 (1980); *Beaver v. Hancock*, 72 N.C. App. 306, 310, 324 S.E.2d 294, 298 (1985).

"In a medical malpractice action, a plaintiff must show (1) the applicable standard of care; (2) a breach of such standard of care by the defendant; (3) the injuries suffered by the plaintiff were proximately caused by such breach; and (4) the damages resulting to the plaintiff." *Weatherford v. Glassman*, 129 N.C. App. 618, 621, 500 S.E.2d 466, 468 (1998). Section 90-21.12 of the North Carolina General Statutes prescribes the appropriate standard of care in a medical malpractice action:

In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice *among members of the same health care profession with similar training and experi-*

*ence situated in the same or similar communities* at the time of the alleged act giving rise to the cause of action.

N.C. Gen. Stat. § 90-21.12 (emphasis added). "Because questions regarding the standard of care for health care professionals ordinarily require highly specialized knowledge, the plaintiff must establish the relevant standard of care through expert testimony." *Smith v. Whitmer,* 159 N.C. App. 192, 195, 582 S.E.2d 669, 671-72 (2003); *see Heatherly v. Indus. Health Council,* 130 N.C. App. 616, 625, 504 S.E.2d 102, 108 (1998); *see also* N.C. Gen. Stat. § 8C-1, Rule 702(a) (2004).

Although it is not necessary for the witness testifying as to the standard of care to have actually practiced in the same community as the defendant, *see Warren v. Canal Indus., Inc.,* 61 N.C. App. 211, 215-16, 300 S.E.2d 557, 560 (1983), the witness must demonstrate that he is familiar with the standard of care in the community where the injury occurred, or the standard of care of similar communities. *See, e.g., Smith,* 159 N.C. App. at 197, 582 S.E.2d at 673; *Henry v. Southeastern OB-GYN Assocs., P.A.,* 145 N.C. App. 208, 210, 550 S.E.2d 245, 246-47, *aff'd per curiam,* 354 N.C. 570, 557 S.E.2d 530 (2001); *Tucker v. Meis,* 127 N.C. App. 197, 198, 487 S.E.2d 827, 829 (1997).

When determining whether an expert is familiar with the standard of care in the community where the injury occurred, "a court should consider whether an expert is familiar with a community that is similar to a defendant's community in regard to physician skill and training, facilities, equipment, funding, and also the physical and financial environment of a particular medical community." *Pitts v. Nash Day Hosp., Inc.,* 167 N.C. App. 194, 197, 605 S.E.2d 154, 156 (2004), *aff'd per curiam,* 359 N.C. 626, 614 S.E.2d 267 (2005).

In *Coffman v. Roberson,* 153 N.C. App. 618, 624, 571 S.E.2d 255, 259 (2002), *disc. review denied,* 356 N.C. 668, 577 S.E.2d 111 (2003), this Court held that a doctor could testify regarding the standard of care when the doctor testified that: (1) he practiced in the Charlotte, North Carolina area and was licensed to practice throughout the State; (2) he was familiar with the standard of care of communities similar to Wilmington, North Carolina; and (3) he based his opinion on "Internet research about the size of the hospital, the training program, and the AHEC (Area Health Education Center) program."

In *Pitts,* this Court held that a doctor could testify regarding the standard of care when the doctor was licenced in the State of North

Carolina and practiced in multiple communities within the State, observed the community of Rocky Mount, North Carolina as well as noted the size of the hospital, and testified that the population and median income of Rocky Mount was similar to communities in which he practiced. *Pitts*, 167 N.C. App. at 198, 605 S.E.2d at 156-57.

In this case, Dr. Kaplan completed two years of his residency training and one year for a fellowship at Duke University in North Carolina. Dr. Kaplan is licensed in North Carolina and worked in Durham and Fayetteville. He has also given lectures in North Carolina on eclampsia and epilepsy seizures. Although Dr. Kaplan has never been to Wilkes Regional Medical Center and has no personal knowledge about Wilkes Regional Medical Center, he studied the demographic data of Wilkes County. Dr. Kaplan testified that he was familiar with the standard of care for a neurologist in the Wilkes County area based on his "own experience in North Carolina, and working in Fayetteville, as well as [his] experience with the patients being sent in from outlining areas. And it's based on [his] learning of the demographic data of Wilkes County."

Like in *Coffman*, where the doctor based his opinion of the relevant standard of care on demographic data and his familiarity with similar communities, *Coffman*, 153 N.C. App. at 624, 571 S.E.2d at 259, Dr. Kaplan based his opinion of the standard of care of neurologists in Wilkes County on demographic data and his familiarity with similar communities. Also, like in *Pitts* and *Coffman*, Dr. Kaplan is licensed in the State of North Carolina and has practiced in multiple communities in the State. *See Pitts*, 167 N.C. App. at 198, 605 S.E.2d at 156; *Coffman*, 153 N.C. App. at 624, 571 S.E.2d at 259. Accordingly, we find that Dr. Kaplan demonstrated that he was familiar with the standard of care in Wilkes County. *See Pitts*, 167 N.C. App. at 197, 605 S.E.2d at 156.

Also, the standard of care must be established by a licenced health care provider who specializes in the same or similar specialty as the medical professional. N.C. Gen. Stat. § 8C-1, Rule 702(b) (2004). Dr. Mascenik testified that he has a specialty in general consulting neurology. Dr. Kaplan is a board certified neurologist. Therefore, Dr. Kaplan specializes in the same specialty as Defendant Dr. Mascenik. N.C. Gen. Stat. § 8C-1, Rule 702(b).

We conclude that the Billingses' expert witness demonstrated that he was sufficiently familiar with the standard of care "among members of the same health care profession with similar training and

experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action" as to offer relevant and competent evidence regarding the alleged negligence by Dr. Mascenik. N.C. Gen. Stat. § 90-21.12. Accordingly, Dr. Kaplan was competent to testify as an expert witness to establish the appropriate standard of care of a neurologist in Wilkes County.

Dr. Kaplan also offered testimony that raised issues of material fact regarding whether Dr. Mascenik breached the standard of care. *See Bruce-Terminix Co.*, 130 N.C. App. at 733, 504 S.E.2d at 577. Dr. Kaplan testified that he "believed [Dr. Mascenik] breached the standard of care in not making the diagnosis of the eclampsia." As the evidence, taken in the light most favorable to the Billingses, presents issues of material fact regarding Dr. Mascenik's breach of the standard of care, summary judgment was not appropriate. *Id.*

Accordingly, we reverse the trial court's grant of summary judgment and remand this case for trial.

Reversed and remanded.

Judges CALABRIA and LEVINSON concur.