VIOLET KERR, Plaintiff v. FRED LONG, JR., M.D., Defendant

No. COA07-916

(Filed 18 March 2008)

## 1. Appeal and Error— preservation of issues—failure to include transcript of deposition

Although defendant doctor in a medical negligence case devoted seven pages in his brief to discussing and quoting from a doctor's videotaped deposition played for the jury, the Court of Appeals was unable to review the contents of this testimony in determining whether the trial court properly granted defendant's motion for directed verdict because: (1) the transcript of the deposition was not included as part of the record on appeal; and (2) N.C. R. App. P. 9 provides that review is limited to the record on appeal, verbatim transcripts, and any other items properly filed with the record.

## 2. Appeal and Error— preservation of issues—failure to argue

A de novo review revealed that the trial court did not err in a medical negligence case by granting defendant's motion for directed verdict because: (1) even if the trial court erred by excluding a doctor's testimony with respect to the applicable standard of care, the trial court's order still included a ruling that plaintiff failed to meet her burden of proof in establishing proximate cause, and plaintiff failed to challenge this alternative basis for the trial court's ruling; and (2) plaintiff failed to present an argument in her brief with respect to her assignment of error that the trial court erred in granting defendant's motion for directed verdict.

Judge HUNTER concurring in result in separate opinion.

Appeal by plaintiff from an order entered 4 January 2007 by Judge J.B. Allen, Jr. in Wake County Superior Court. Heard in the Court of Appeals 6 February 2008.

KERR v. LONG

[189 N.C. App. 331 (2008)]

*Cedric R. Perry, for plaintiff-appellant.*

*Cranfill Sumner & Hartzog, LLP, by David D. Ward, Jaye E. Bingham, and Michael C. Allen, for defendant-appellee.*

JACKSON, Judge.

Violet Kerr ("plaintiff") appeals from the trial court's order entered 4 January 2007 granting a directed verdict in favor of Dr. Fred Long, Jr. ("defendant"). For the following reasons, we affirm.

On 21 January 2003, plaintiff began experiencing pain in her gallbladder area and presented to the Emergency Department at WakeMed, complaining of a sharp, stabbing pain in her upper abdomen. Doctors at WakeMed performed several tests on plaintiff, noted an enlargement in her stomach area, and instructed her to seek further treatment.

On 24 January 2003, plaintiff presented to Dr. Quigless, complaining of severe abdominal pain. An ultrasound performed on 28 January 2003 indicated that plaintiff had gallstones. Dr. Quigless subsequently left the medical practice group, and defendant took over plaintiff's care with her consent.

On 31 January 2003, plaintiff presented to defendant, who explained to plaintiff the potential for gallbladder surgery. Defendant explained that although he would attempt laparoscopic cholecystectomy, the surgery could be converted to an open procedure. Plaintiff claimed that she could not remember defendant explaining to her that there could be reasons to convert the minimally-invasive laparoscopic procedure into a more invasive open procedure; however, she acknowledged that on 7 February 2003, she signed the "request for operation or other procedure," which expressly indicated that the procedure was a laparoscopic cholecystectomy, "[p]ossible open." Defendant also provided plaintiff with a pamphlet explaining the procedure and its risks, including the possibility of striking and injuring the common bile duct. At trial, plaintiff testified that she was "aware going into the procedure that one of the risks was an injury to the common bile duct."

On 8 February 2003, defendant performed gallbladder surgery on plaintiff at Wake Medical Hospital. Plaintiff testified that on 9 February 2003, defendant came into her room and stated that he had made a mistake. She also noticed at that time that there was "some kind of J bag" attached to her "to keep the poison from going into

[her] system." Plaintiff testified that defendant informed her that she would be sent to Chapel Hill. The same day, plaintiff was transferred to UNC Hospitals and seen by Dr. Behrns. Plaintiff stated that Dr. Behrns attempted to repair her bile duct by hooking a part of her small intestines to the common bile duct. Plaintiff stated that she believed she would not be at UNC Hospitals for more than one night as a result of the procedure, but she remained at UNC Hospitals for five or six days.

Plaintiff testified that in 2003, 2004, and 2005, she periodically felt tenderness at her surgical site, with a pulling, tearing pain on the right side. In 2006, plaintiff had a CT scan performed, which revealed the presence of "something kind of suspicious[,] . . . something they couldn't figure out." Plaintiff subsequently was sent to UNC Hospitals, where she presented to Dr. John Martinie ("Dr. Martinie") in February 2006. A colonoscopy performed on plaintiff was determined to be "normal." In March 2006, Dr. Martinie performed an exploratory laparoscopic procedure to identify what was revealed by the CT scan. Plaintiff acknowledged that "[t]hey couldn't find anything that they saw on the CT [scan]," and the procedure only revealed the presence of scar tissue. At a follow-up visit with Dr. Martinie, plaintiff stated that she "still had a little pull, but it wasn't as bad." Plaintiff has not returned to UNC Hospitals since that follow-up visit, and at trial, she described her current condition as a "slight pulling pain."

On 29 December 2004, plaintiff filed a complaint alleging medical negligence against defendant and his employer, Premier Surgical Associates, PLLC ("Premier"). On 22 May 2006, plaintiff took a voluntary dismissal against Premier, and plaintiff's action against defendant proceeded to trial on 2 and 3 January 2007.

At trial, plaintiff sought to present the 16 May 2006 videotaped deposition of Dr. Mitchell M. Frost ("Dr. Frost"). After hearing arguments of counsel and reviewing the record, the trial court ruled that, as a matter of law, Dr. Frost was not "a competent expert witness to testify as to the standard of care of the question of medical negligence." Counsel for plaintiff stated that he did "not wish to have the other portion of the deposition [of Dr. Frost] presented to the jury." Counsel for plaintiff declined to call defendant, and stated that he had no further evidence. By order entered 4 January 2007, the court granted defendant's motion for a directed verdict, ruling that (1) Dr. Frost did not satisfy the requirements of an expert witness in a medical malpractice case; and (2) plaintiff failed to offer competent

testimony showing that defendant was negligent and, therefore, failed to meet her burden of proof. Thereafter, plaintiff gave timely notice of appeal.

[1] As a preliminary matter, we note that defendant devotes seven pages of his brief to discussing and quoting from Dr. Martinie's video-taped deposition, which was played for the jury. The transcript of this deposition, however, was not included as part of the record on appeal. Pursuant to the North Carolina Rules of Appellate Procedure, our review is limited to the record on appeal, verbatim transcripts constituted in accordance with Rule 9, and any other items filed with the record in accordance with Rule 9(c) and 9(d). *See* N.C. R. App. P. 9(a) (2006). Here, the only transcripts constituted in accordance with Rule 9 and properly presented for review by this Court are those from the depositions of (1) Dr. Frost on 16 May 2006; (2) Dr. Frost on 15 December 2006; (3) Dr. Jerry Stirman, Jr. on 24 April 2006; and (4) defendant on 26 May 2005. Accordingly, we are unable to review the contents of Dr. Martinie's testimony in determining whether the trial court properly granted defendant's motion for directed verdict.

[2] "This Court reviews a trial court's grant of a motion for directed verdict *de novo*." *Herring v. Food Lion, LLC*, 175 N.C. App. 22, 26, 623 S.E.2d 281, 284 (2005). Therefore, we must determine "whether, upon examination of all the evidence in the light most favorable to the nonmoving party, and that party being given the benefit of every reasonable inference drawn therefrom, the evidence [wa]s sufficient to be submitted to the jury." *Brookshire v. N.C. Dep't of Transp.*, 180 N.C. App. 670, 672, 637 S.E.2d 902, 904 (2006) (internal quotation marks and citation omitted). " 'When a defendant moves for a directed verdict in a medical malpractice case, the question raised is whether plaintiff has offered evidence of each of the following elements of his claim for relief: (1) the standard of care; (2) breach of the standard of care; (3) proximate causation; and (4) damages.' " *Pope v. Cumberland County Hosp. Sys., Inc.*, 171 N.C. App. 748, 750, 615 S.E.2d 715, 717 (2005) (quoting *Felts v. Liberty Emergency Serv.*, 97 N.C. App. 381, 383, 388 S.E.2d 619, 620 (1990)).

On appeal, plaintiff contends that the trial court erred in excluding Dr. Frost's testimony as to the applicable standard of care. Specifically, plaintiff contends that "Dr. Frost was competent to testify as to the skill and technique that was required of [defendant], as the evidence, viewed in the light most favorable to [plaintiff], demonstrated that [plaintiff]'s expert witness qualified to testify as an

expert in the case at bar." The trial court, however, based its order not only upon plaintiff's failure to satisfy her burden of presenting competent testimony showing that defendant breached the applicable standard of care but also that plaintiff failed to establish proximate cause.

It is well-established that "[i]f the evidence failed to show a causal connection between the alleged negligence and the injury complained of, motion for directed verdict in favor of the defendant was proper." *Hart v. Warren*, 46 N.C. App. 672, 678, 266 S.E.2d 53, 58, *disc. rev. denied*, 301 N.C. 89 (1980). Therefore, even if the trial court erred in excluding Dr. Frost's testimony with respect to the applicable standard of care, the trial court's order still includes a ruling that plaintiff failed to meet her burden of proof in establishing proximate cause. Because plaintiff failed to challenge this alternate basis for the trial court's order granting defendant's motion for directed verdict, this Court need not evaluate her claims with respect to Dr. Frost's knowledge of the applicable standard of care and his competency to serve as an expert witness. *See* N.C. R. App. P. 10(a), 10(c), 28(a) (2006).

Additionally, although plaintiff's sole assignment of error in the record on appeal states, *inter alia*, that the trial court "abused [its] discretion by . . . granting Defendant's motion for directed verdict," plaintiff has failed to present any argument in the body of her brief directly related to the trial court's order granting defendant's motion for directed verdict. The only portions of her brief in which the directed verdict order arguably is discussed are the standard of review[1] and conclusion sections. Plaintiff presented an argument in her brief with respect to her assignment of error that the trial court erred in excluding Dr. Frost's testimony, but she failed to present any argument in her brief with respect to her assignment of error that the trial court erred in granting defendant's motion for directed verdict. It is well-settled that "[a]ssignments of error . . . in support of which no *reason or argument* is stated . . . will be taken as abandoned." N.C. R. App. P 28(b)(6) (2006) (emphasis added); *see also* N.C. R. App. P.

---

1. Here, plaintiff stated only the *trial court's* standard for ruling on a motion for directed verdict. Although "the reviewing court is confronted with the identical task as the trial court" with respect to a directed verdict in a negligence action, *Cobb v. Reitter*, 105 N.C. App. 218, 220, 412 S.E.2d 110, 111 (1992), it nevertheless was plaintiff's burden as the appellant to state the applicable standard of *appellate* review. *See* N.C. R. App. P. 28(b)(6) (2006) (requiring an appellant's brief to include "a concise statement of the applicable standard(s) of review for each question presented" as well as "citations of the authorities" supporting the proposed standard of appellate review).

28(a) (2006) ("Questions raised by assignments of error in appeals from trial tribunals but not then *presented and discussed* in a party's brief, are deemed abandoned." (emphasis added)); *see, e.g., Nguyen v. Burgerbusters, Inc.*, 182 N.C. App. 447, 453, 642 S.E.2d 502, 507, *disc. rev. denied*, 361 N.C. 695, 652 S.E.2d 650 (2007). Therefore, we deem plaintiff's assignment of error related to the order granting the directed verdict abandoned.[2]

Because plaintiff has failed to present an argument with respect to either the alternate basis for the trial court's order or the trial court's order itself, a resolution of defendant's argument with respect to Dr. Frost's testimony is unnecessary for a resolution of the instant appeal. Accordingly, the trial court's order granting defendant's motion for directed verdict is affirmed.

Affirmed.

Judge HUNTER concurs in the result in a separate opinion.

Judge BRYANT concur.

HUNTER, Judge, concurring in the result.

I concur with the result of the majority's opinion but would affirm the trial court's entrance of a directed verdict on the ground that Violet R. Kerr's ("plaintiff") expert's testimony was properly excluded, thereby making a directed verdict in favor of Dr. Fred L. Long, Jr. ("defendant") appropriate.

The entry of a directed verdict is reviewed *de novo. Herring v. Food Lion, LLC*, 175 N.C. App. 22, 26, 623 S.E.2d 281, 284 (2005). As the majority correctly notes, upon a defendant's motion for a directed

---

2. Although not bound by unpublished opinions, *see State v. Pritchard*, 186 N.C. App. 128, 129, 649 S.E.2d 917, 918 (2007), we note that similar conclusions have been reached by this Court. *See, e.g., Garrison v. Holt*, No. COA06-1085, 2007 N.C. App. LEXIS 1883, at *9-10 n.4 (N.C. Ct. App. Sept. 4, 2007) ("Although Respondent assigns error to the trial court's denial of her Motion for New Trial and for Relief from Judgment and mentions Rule 59 and Rule 60 of the North Carolina Rules of Civil Procedure in the 'Standard of Review' and 'Conclusion' sections of her brief, she asserts no argument on these grounds in the body of her brief. Therefore, the assignment of error addressing Rule 59 and Rule 60 is deemed abandoned."); *Grier v. Earl Tindol Ford, Inc.*, No. COA04-815, 2005 N.C. App. LEXIS 820, at *3 (N.C. Ct. App. Apr. 19, 2005) ("Plaintiff also assigns error to the court's granting defendant's motion for directed verdict. While plaintiff cites two cases regarding the standard of review on appeal of a grant of directed verdict, he makes no argument regarding their application to his case. We deem this assignment abandoned.").

verdict in a medical malpractice case, " 'the question raised is whether plaintiff has offered evidence of each of the following elements of his claim for relief: (1) the standard of care; (2) breach of the standard of care; (3) proximate causation; and (4) damages.' " *Pope v. Cumberland Cty. Hosp. Sys., Inc.*, 171 N.C. App. 748, 750, 615 S.E.2d 715, 717 (2005) (citation omitted).

In this case, the trial court excluded the testimony of Dr. Mitchell M. Frost, plaintiff's expert. Plaintiff argues that the exclusion of such testimony was in error, thereby rendering the trial court's grant of directed verdict for defendant erroneous. I disagree.

In medical malpractice cases, to prevail, plaintiffs must establish by the greater weight of the evidence that the care of the defendant-healthcare provider "was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action." N.C. Gen. Stat. § 90-21.12 (2007). In opposing a motion for summary judgment or directed verdict, "a plaintiff must demonstrate that his expert witness is 'competent to testify as an expert witness to establish the appropriate standard of care' in the relevant community." *Purvis v. Moses H. Cone Mem'l Hosp. Serv. Corp.*, 175 N.C. App. 474, 477-78, 624 S.E.2d 380, 384 (2006) (quoting *Billings v. Rosenstein*, 174 N.C. App. 191, 196, 619 S.E.2d 922, 925 (2005)). Simply put, a plaintiff must produce expert testimony that: (1) the expert is familiar with the community where the injury occurred or a similar community; (2) the expert was familiar with the area or similar area on the date in which the injury occurred; and (3) the expert has similar training and experience as the defendant.

In this case, plaintiff's expert testimony regarding his knowledge of Wake County, where the injury occurred, came from a website he visited in 2004. The date of the alleged injury was in 2003. Defendant therefore argues that the trial court did not err in excluding Dr. Frost's testimony. I agree.

In *Purvis*, this Court held that an expert's testimony was properly excluded where the expert's only knowledge of the locality came four years after the alleged injury. *Id.* at 480-81, 624 S.E.2d at 385. We reasoned that "N.C. Gen. Stat. § 90-21.12 . . . specifically states that the expert must be familiar with the standard of care in the same or similar community '*at the time of the alleged act giving rise to the cause of action.*' " *Id.* at 480, 624 S.E.2d at 385 (emphasis added) (quoting

N.C. Gen. Stat. § 90-21.12). Although plaintiff's expert did not wait four years before gathering information on Wake County, he still failed to comply with the statute insofar as it requires knowledge at the time of the injury.[3] Dr. Frost even testified that the time between the injury and his research on the standard of care in Wake County that he "would expect that there were some . . . changes" in the standard. *Cf. Roush v. Kennon*, 188 N.C. App. 570, 576, —— S.E.2d. ——, —— (No. COA07-209 filed 5 February 2008) (holding that an expert can comply with the timing requirement if an expert's research, even after his or her deposition, revealed that the standard of care in his or her community was the same or similar to the standard of care in the community in which he or she is testifying when the injury occurred). I would therefore hold that plaintiff's expert's testimony was properly excluded per *Purvis* and thus plaintiff has failed to produce sufficient expert testimony to defeat defendant's motion for a directed verdict, and I would affirm the ruling of the trial court on that ground.

---

3. The fact that plaintiff's expert relied on internet research is not a sufficient ground to exclude an expert's testimony. *See Coffman v. Roberson*, 153 N.C. App. 618, 624-25, 571 S.E.2d 255, 259 (2002) (holding that experts may rely in part on internet research).