CYNTHIA K. FLOYD and LESTER J. FLOYD, Plaintiffs,
v.
DAVID ROGER ALLEN, JR., M.D., and ALLEN ORTHOPEDICS, P.A., Defendants.
No. COA07-1365
Court of Appeals of North Carolina
Filed November 4, 2008
This case not for publication
The Law Offices of William S. Britt by William S. Britt, for plaintiffs-appellants.
Manning, Fulton, & Skinner, P.A., by Robert S. Shields Jr. and Katherine M. Bulfer, for defendants-appellees.
STROUD, Judge.
Cynthia K. Floyd and Lester J. Floyd (collectively "plaintiffs") appeal from the trial court's 1 November 2006 order dismissing their medical malpractice case with prejudice in favor of Dr. David Allen and Allen Orthopedics, P.A. (collectively "defendants") after the trial court excluded their expert witnesses, Dr. James Comadoll ("Dr. Comadoll") and Dr. Joseph Tatum ("Dr. Tatum"), finding them not competent to give testimony regarding the applicable standard of care pursuant to N.C. Gen. Stat. § 90.21-12. The dispositive question is whether a medical expert is competent to give testimony as to the applicable standard of care when the medical expert (a) compares and contrasts the medical community at issue with the medical community in which he practices, and (b) expressly testifies that the medical communities were similar in terms of resources and services. Because we conclude that one of the medical experts who testified sub judice was competent to testify as to the applicable standard of care, we reverse the trial court's order dismissing plaintiffs' case on the grounds that plaintiffs had offered no expert testimony as to the applicable standard of care.

I. Factual Background
On 14 July 2004, plaintiffs filed a complaint against defendants for medical malpractice seeking compensatory damages for, inter alia, pain and suffering and disfigurement. The complaint alleged the following facts:
On 23 June 2001, Cynthia Floyd ("plaintiff") arrived at the Southeastern Regional Medical Center Emergency Room with a fractured right wrist. Dr. David Allen ("defendant") treated plaintiff in the emergency room. X-rays revealed the fracture to be aligned properly and "in good position" within the cast. Plaintiff was discharged from Southeastern Regional Medical Center with instructions to follow up with defendant in two weeks.
Defendant provided medical care and treatment to plaintiff from the time of her visit to the emergency room on 23 June 2001 to 21 August 2001. On 21 August 2001, defendant recommended that plaintiff return to work on 27 August 2001 with no "right upper extremity" lifting. On 11 October 2001, plaintiff went to the Wake Forest School of Medicine Orthopedic Department, where Dr. David Martin diagnosed plaintiff with chronic regional pain syndrome, secondary to a right distal radius fracture. On 27 November 2001, Dr. David Ruch performed surgery on plaintiff at Wake Forest University Baptist Medical Center. 17 May 2002, after plaintiff's full recovery, Dr. Ruch rated plaintiff as having thirty percent permanent partial impairment of her right hand.
On 2 September 2004, defendants filed an answer which generally denied the allegations of the complaint based upon lack of sufficient knowledge or information and reserved the right to amend the answer. On 21 September 2004, defendants filed an amended answer which denied the material allegations of the complaint in detail and asserted the defenses of contributory negligence and lack of proximate cause.
Plaintiffs designated two expert witnesses to testify regarding the applicable standard of care: Dr. Tatum, an orthopedic surgeon licensed in Georgia who practices in Decatur, a suburb of Atlanta, and Dr. Comadoll, an orthopedic surgeon licensed in North Carolina who practices in Salisbury, North Carolina. The case was set for trial on 14 August 2006.
On 11 August 2006, defendants filed a six-part motion in limine. The motion sought, inter alia, to "preclud[e] plaintiff from soliciting standard of care opinions from their expert not previously disclosed in his discovery deposition."[1] The motion did not name any of plaintiffs' experts. The trial court heard the motion on 14 August 2006, and rendered an order in open court granting the motion. Also on 14 August 2006, defendants filed a separate pretrial motion in limine to exclude Dr. Comadoll as an expert witness on the grounds that he was not familiar with the applicable standard of care as defined by N.C. Gen. Stat. § 90-21.12, based upon specific portions of Dr. Comadoll's deposition. The trial court also heard that motion on 14 August 2006, rendering an order in open court granting defendants' motion. There is no indication in the record that the trial court entered written orders regarding either of defendants' written motions in limine.
After rendering its oral orders granting defendants' motions in limine, the trial court called the case for trial and selected the jury. After jury selection the trial was recessed to reconvene on 16 August 2006.
Before the jury was brought in on 16 August 2006, defendants made an oral motion in limine to exclude Dr. Tatum, plaintiffs' sole remaining expert witness, arguing that Dr. Tatum was not competent as an expert witness under N.C. Gen. Stat. § 90-21.12. Apparently without considering any evidence such as affidavits or depositions, the trial court agreed and granted defendants' motion. Defendants then made an oral "motion to dismiss, motion for summary judgment, motion for directed verdict [on the ground that plaintiffs' attorney] does not have an expert to give to the jury in this malpractice case and, accordingly it should be dismissed." The trial court immediately rendered an order in open court granting defendants' motion. On 1 November 2006, the trial court entered its written order dismissing plaintiffs' case with prejudice "pursuant to Rule 41 of the North Carolina Rules of Civil Procedure."[2]
On 9 November 2006, plaintiffs moved to set aside the trial court order and for a new trial pursuant to Rule 59(a)(7), (8),(9) and Rule 60(b)(1) and (6).[3] The trial court heard plaintiffs' Rule 59 and Rule 60 motions on 19 April 2007. The motions were denied by order entered 10 May 2007. On 7 June 2007, plaintiffs filed notice of appeal from the order of 1 November 2006 and the order of 10 May 2007.

II. Procedural Issues & Standards of Review

A. Motion to Dismiss
In open court, after the jury had been selected, but before either side had presented any evidence defendants orally made "a motion to dismiss, motion for summary judgment, motion for directed verdict [on the grounds that plaintiffs' attorney] does not have an expert to give to the jury in this malpractice case and, accordingly it should be dismissed." These oral "motions" are the only relevant dispositive "motions" contained in the record before us. The record does not contain a copy of any written motion defendants made to dispose of the case.
The trial judge summarily rendered an order of dismissal in open court without stating any specific basis for the dismissal, although it is apparent from the context that the dismissal was based upon the trial judge's exclusion of plaintiffs' sole remaining medical expert witness. The trial judge then entered a written order on 1 November 2006 which expressly granted "Defendants' Motion to Dismiss with Prejudice pursuant to Rule 41 of the Rules of Civil Procedure[,] solely on the grounds that "both of the Plaintiff's experts were not competent to give standard of care testimony under N.C. Gen. Stat. § 90-21.12[.]" The written order contained no findings of fact.
It is not clear from the order under which provision of Rule 41 the trial court dismissed plaintiffs' complaint. Rule 41, subsection (b)[4] provides two broad categories of involuntary dismissal: (1) failure to prosecute or comply with a court order or with procedural rules, and (2) failure to make out a prima facie case at a bench trial. N.C. Gen. Stat. § 1A-1, Rule 41(b). The trial court's dismissal of plaintiff's complaint fits neither category. The record indicates that a jury had been selected; however, neither the judge nor the jury heard any evidence, because the trial court granted defendants' motions to exclude plaintiffs' experts prior to presentation of any testimony. Because the trial court was not presented with evidence in support of the motion to dismiss, and therefore could not have considered or weighed any evidence, the action was not dismissed on the basis of plaintiffs' failure to make out a prima facie case at a bench trial. Furthermore, the trial court's order does not refer to plaintiffs' failure to prosecute or to any rule or order of the court violated by plaintiffs, and the record does not otherwise disclose any failure to prosecute or violation of any rule or order on the part of plaintiffs.
Because defendants' motion does not fit under Rule 41(b), we must determine its substance despite its label. N.C. Farm Bureau Mut. Ins. Co. v. Holt, 154 N.C. App. 156, 159, 574 S.E.2d 6, 8(2002) (citation, quotation marks and brackets omitted) (reviewing the defendant's motion as "a Rule 12(b)(2) motion since defendant's motion was based on lack of personal jurisdiction" even though the defendant had labeled it as a summary judgment motion), disc. review denied and appeal dismissed, 357 N.C. 63, 579 S.E.2d 391 (2003). We conclude the substance of the motion and order was summary judgment on the grounds that plaintiffs failed to present evidence on an essential element of their claim  the standard of care. See Hamilton v. Thomasville Medical Associates, Inc., ___ N.C. App. ___, ___, 654 S.E.2d 708, 711 (2007) (reversing summary judgment in a medical malpractice case when the trial court improperly excluded plaintiff's expert on causation); Sturgill v. Ashe Memorial Hosp., Inc., ___ N.C. App. ___, ___, 652 S.E.2d 302, 307 (2007) (affirming summary judgment when plaintiff failed to have the medical malpractice complaint certified by a standard of care expert pursuant to Rule 9(j)); Griffith v. Glen Wood Co., Inc., 184 N.C. App. 206, 218, 646 S.E.2d 550, 559 (2007) (affirming summary judgment when plaintiff failed to forecast evidence in support of each essential element in its claim). Accordingly, we review de novo as we would for an order expressly granting summary judgment. Sturgill, ___ N.C. App. at ___, 652 S.E.2d at 304.

B. Motions in Limine to Disqualify Expert Witnesses
As the trial court's rulings on defendants' motions in limine involved the merits of plaintiffs' claims and necessarily affected the final judgment, we will therefore exercise our discretion to review those rulings. N.C. Gen. Stat. § 1-278 (2007) ("Upon an appeal from a judgment, the court may review any intermediate order involving the merits and necessarily affecting the judgment."). Defendants' motions in limine were based upon Rule 104, regarding the qualification of witnesses to testify. N.C. Gen. Stat. § 8C-1, Rule 104(a) ("Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court[.]"); Howerton v. Arai Helmet, Ltd., 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004) ("It is well-established that trial courts must decide preliminary questions concerning the qualifications of experts to testify or the admissibility of expert testimony." (Citing N.C. Gen. Stat. § 8C-1, Rule 104(a))); State v. Fearing, 315 N.C. 167, 168, 337 S.E.2d 551, 552 (1985) ("The trial judge correctly treated the motion [in limine], pursuant to N.C.G.S. § 8C-1, Rule 104, as one raising a preliminary question concerning the qualification of witnesses to testify.").
"Whether the witness has the requisite skill to qualify him as an expert is chiefly a question of fact[.]" State v. Bullard, 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984) (citation and quotation omitted). Therefore, "[o]rdinarily whether a witness qualifies as an expert is exclusively within the discretion of the trial judge and is not to be reversed on appeal absent a complete lack of evidence to support his ruling." State v. Howard, 78 N.C. App. 262, 270, 337 S.E.2d 598, 603 (1985), disc. review denied and appeal dismissed, 316 N.C. 198, 341 S.E.2d 581 (1986).

III. Motions in Limine to Disqualify Expert Witnesses
Plaintiffs contend that the instant case is apposite to Billings v. Rosenstein, 174 N.C. App. 191, 619 S.E.2d 922 (2005), disc. review denied, 360 N.C. 478, 630 S.E.2d 664 (2006). In Billings, this Court held the trial court erred when it excluded standard of care testimony from an expert who was "licensed in the State of North Carolina and ha[d] practiced in multiple communities in the State[,]" 174 N.C. App. at 195, 619 S.E.2d at 925, and "based his opinion of the standard of care of neurologists in [the county where the injury occurred] on demographic data and his familiarity with similar communities[,]" id., even though the expert had "never been to" and had "no personal knowledge about" the hospital where the alleged malpractice occurred, id.
Defendants contend that the instant case is more apposite to Purvis v. Moses H. Cone Mem'l Hosp. Serv. Corp., 175 N.C. App. 474, 480-81, 624 S.E.2d 380, 385-86 (2006). In Purvis, this Court held that the plaintiff's expert witness failed to qualify pursuant to N.C. Gen. Stat. § 90-21.12 because his knowledge of the applicable standard of care came from his review of Internet materials regarding the medical community at issue more than four years after the alleged injury to plaintiff. Id. We agree with defendants as to Dr. Comadoll, but agree with plaintiffs as to Dr. Tatum.
Section 90-21.12 of the North Carolina General Statutes prescribes the appropriate standard of care in a medical malpractice action:
In any action for damages for personal injury or death arising out of the furnishing or thefailure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by a greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

N.C. Gen. Stat. § 90-21.12 (2005) (emphasis added).
In applying N.C. Gen. Stat. § 90-21.12, this Court has held:
Although it is not necessary for the witness testifying as to the [applicable] standard of care to have actually practiced in the same community as the defendant, the [expert] witness must demonstrate that he is familiar with the standard of care in the community where the injury occurred, or the standard of care of similar communities.
When determining whether an expert is familiar with the standard of care in the community where the injury occurred, a court should consider whether an expert is familiar with a community that is similar to a defendant's community in regard to physician skill and training, facilities, equipment, funding, and also the physical and financial environment of a particular medical community.
Billings, 174 N.C. App. at 194, 619 S.E.2d at 924-25 (citations and quotation marks omitted).

A. Dr. Comadoll
We conclude that the trial court properly excluded the expert testimony of Dr. Comadoll for two reasons. First, Dr. Comadoll relied only upon his one-day "breeze-in, breeze-out" interview at the Lumberton hospital in 1992 to form an opinion regarding the applicable standard of care in 2001 in Lumberton. This reliance fails to satisfy the requirement of contemporaneousness. N.C. Gen. Stat. § 90-21.12; Purvis, 175 N.C. App. at 480-81, 624 S.E.2d at 385. Second, Dr. Comadoll testified specifically that he could not "determine whether [Lumberton is] similar to the medical community in which [he] practices[.]" This testimony, by itself, fails to satisfy the statutory "same or similar communities" mandate. N.C. Gen. Stat. § 90-21.12; Purvis, 175 N.C. App. at 480, 624 S.E.2d at 385 ("The expert must be familiar with the standard of care in the same or similar community[.]"). Dr. Comadoll, by his own acknowledgment, was not competent to testify as to the applicable standard of care. Accordingly we conclude the trial court properly excluded his expert testimony and overrule plaintiffs' assignment of error concerning Dr. Comadoll's exclusion as an expert witness.

B. Dr. Tatum
In his deposition, Dr. Tatum testified that he, like defendant, is a medical doctor specializing in orthopedic surgery. He testified that he was born in North Carolina, is licensed in Georgia, and practices medicine in Decatur, Georgia. Dr. Tatum explained his knowledge of the medical community in Lumberton, North Carolina and its similarities to the community in which he practices:
The medical community is similar to [the] medical community in Decatur, Georgia, where I practice. The population is about 20,000. You have a 400-bed hospital there with all of the usual special technical things, such as MRI and intensive care and CT, as we do here in Decatur. You draw on the surrounding communities somewhat; we don't get much from the surrounding community because there are other hospitals around us, but it sounds like a similar community.
In his testimony, Dr. Tatum expressly testified that the medical community in Lumberton is similar to the medical community in Decatur where he practices. Dr. Tatum drew comparisons and distinctions between the medical communities and hospitals in Lumberton and Decatur. He testified regarding his knowledge of specific hospital resources available in Lumberton. Dr. Tatum testified that the medical community in Lumberton shares similar resources with and offers the same technical services, such as MRI, CT, and intensive care, as the medical community in Decatur. Dr. Tatum testified concerning similarities and distinctions regarding the geographic areas surrounding Lumberton and Decatur and from which each medical community draws its patients. Dr. Tatum testified that plaintiffs' counsel informed him prior to his deposition that the hospital in Lumberton contained approximately 400 beds; however, Dr. Tatum testified that he independently learned additional information about the medical community in Lumberton from his medical colleague, a neurosurgeon from Lumberton whom practices with Dr. Tatum in Decatur.
Additionally, plaintiffs presented an affidavit signed by Dr. Tatum in opposition to defendants' motion in limine. The affidavit indicates that Dr. Tatum supplemented his understanding of the applicable standard of care in Lumberton subsequent to his deposition, by reviewing, inter alia, each of the depositions in the case and Internet materials regarding the medical communities, their resources, and the health services offered in 2001 in both Lumberton and Decatur. After reviewing these sources, Dr. Tatum concluded that he was familiar with the standard of care in Lumberton, and that defendant's medical care and treatment of plaintiff breached that standard.
Dr. Tatum's deposition testimony and his independent review of various materials subsequent to his deposition testimony suffices to satisfy the requirements of N.C. Gen. Stat. § 90-21.12. See Roush, ___ N.C. App. at ___, 656 S.E.2d 603, 607-08 (holding expert witness qualified to testify as to the applicable standard of care despite his deposition testimony which revealed that the expert witness had "never been to Charlotte," and "knew nothing about the dental community in Charlotte," because the expert "sought to supplement his understanding of the applicable standard of care in Charlotte" subsequent to his deposition); Hamilton v. Thomasville Medical, ___ N.C. App. ___, ___, 654 S.E.2d 708, 711 (2007) ("Plaintiff's expert witnesses are in a better position than the trier of fact to have an opinion on the subject of whether [the plaintiff] would have suffered a stroke but for [the physician's] failure to read the 29 November 1999 MRI. [Therefore, t]he trial court erred by granting defendants' motion in limine to exclude plaintiff's experts' testimony regarding causation.").
The fact that Dr. Tatum previously testified in his deposition that he believed defendants had generally breached the applicable standard of care generally does not invalidate his later conclusion that defendants fell below the applicable standard of care in Lumberton, North Carolina more specifically. See Coffman v. Roberson, 153 N.C. App. 618, 624-25, 571 S.E.2d 255, 259 (2002) (holding that expert witness standard of care testimony was sufficient when doctor testified that he was familiar with the standard of care in similar communities and that he based his opinion on his own Internet research regarding the hospital), disc. review denied, 356 N.C. 668, 577 S.E.2d 111 (2003); Cox v. Steffes, 161 N.C. App. 237, 245-46, 587 S.E.2d 908, 913-14 (2003) (rejecting the argument that expert testimony regarding a more general national standard of care is insufficient per se under N.C. Gen. Stat. § 90-21.12), disc. review denied, 358 N.C. 233, 595 S.E.2d 148 (2004).
In sum, Dr. Tatum possessed sufficient familiarity with Lumberton or similar communities and the practice of orthopedic surgery therein to testify as to the appropriate standard of care as required by N.C. Gen. Stat. § 90-21.12. We conclude, therefore, that the record contains evidence sufficient to qualify Dr. Tatum as an expert witness on the applicable standard of care in Lumberton, North Carolina. See Roush, ___ N.C. App. ___, ___, 656 S.E.2d at 606-08 ("[T]he record contains competent evidence sufficient to qualify [plaintiff's expert] as a standard of care witness. . . . [Therefore,] we hold the trial court erred in striking plaintiff's witness, . . . and subsequently dismissing plaintiff's claim.").
To the contrary, the trial court sub judice rendered its order regarding Dr. Tatum in response to defendants' motion in less than fifteen minutes,[5] with no indication in the record that the trial court actually read the ninety-nine page deposition of Dr. Tatum. Unlike defendants' written motion as to Dr. Comadoll, which contained relevant excerpts from his deposition, defendants' oral motion as to Dr. Tatum contained no substantive factual information. The record contains no indication that the trial court had previously considered Dr. Tatum's deposition testimony, as defendants' earlier written motion in limine to exclude an expert witness related only to Dr. Comadoll. While "the short time which passed between hearing the motion and rendering the order in open court is not per se grounds for setting it aside[,]" Fayetteville Publ'g Co. v. Advanced Internet Tech., Inc., ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (2008), it is some evidence that the trial court acted arbitrarily. We also recognize that "[a] judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court." N.C. Gen. Stat. § 1A-1, Rule 58. "The announcement of judgment in open court is the mere rendering of judgment, not the entry of judgment." Draughon v. Harnett Cty. Bd. of Educ., 158 N.C. App. 208, 214, 580 S.E.2d 732, 737 (2003) (citation and quotation marks omitted), aff'd per curiam, 358 N.C. 131, 591 S.E.2d 521 (2004). Although the rendition of the order in open court is not controlling, the written order which was ultimately entered also contains no indication that the trial court considered any information beyond the oral motion. Cf. Fayetteville Publ'g Co. ___ N.C. App. at ___, ___ S.E.2d at ___ (Written order stated "specifically that the trial court `reviewed the pleadings, the Motion, the materials and exhibits presented by the parties, the applicable authorities presented by the parties and . . . fully heard and considered the arguments of counsel for both parties' before making its ruling."). Accordingly, we hold that the trial court abused its discretion when it excluded Dr. Tatum as an expert witness.

IV. Dismissal of the Complaint
Defendants argue only that dismissal was proper because plaintiffs failed to qualify expert witnesses to establish the essential elements of the applicable standard of care. However, we concluded supra that the trial court improperly excluded the testimony of Dr. Tatum as to the applicable standard of care. Accordingly, the trial court's dismissal of plaintiffs' complaint on that basis must be reversed. Roush, ___ N.C. App. at ___, 656 S.E.2d at 608.
Reversed.
Chief Judge MARTIN and Judge CALABRIA concur.
Report per Rule 30(e).
NOTES
[1] The other five parts of the motion in limine dealt with matters completely unrelated to expert witnesses.
[2] According to the order, the "CAUSE [came] on to be heard before [Judge Ola M. Lewis] presiding at the August 17, 2006 session of Robeson County Civil Superior Court for the trial of this action[.]" However, the Record designates and includes verbatim transcripts from the "August 14, 2004 and August 16, 2004 Motion hearings[.]" No other transcripts of hearing related to the motion to dismiss were filed with this Court. We assume the trial court meant to say the instant case came on to be heard on August 16, 2006.
[3] Plaintiffs' assigned error to the denial of these motions but abandoned the assignments of error by failure to argue them in the brief. N.C.R. App. P. 28(b)(6).
[4] For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim therein against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).

N.C. Gen. Stat. § 1A-1, Rule 41(b).
[5] According to the transcript for 14 August 2006, the trial was to reconvene at 9:30 a.m. on 16 August 2006. The transcript of 16 August 2006 purports to begin at 10:00 a.m. and end at 9:45 a.m. We take judicial notice of the fact that time did not go backwards on 16 August 2006, and therefore assume that the hearing began at 9:30 as scheduled and ended at 9:45. The length of the hearing transcript, nine pages, supports this assumption.